DOROTHY M. FAULKENBURY, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED, PLAINTIFF v. TEACHERS' AND STATE EMPLOYEES' RETIREMENT SYSTEM OF NORTH CAROLINA, A CORPORATION; BOARD OF TRUSTEES TEACHERS' AND STATE EMPLOYEES' RETIREMENT SYSTEM OF NORTH CAROLINA, A BODY POLITIC AND CORPORATE; DENNIS DUCKER, DIRECTOR OF THE RETIREMENT SYSTEM DIVISIONS AND DEPUTY TREASURER OF THE STATE OF NORTH CAROLINA (IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES); HARLAN E. BOYLES, TREASURER OF THE STATE OF NORTH CAROLINA AND CHAIRMAN OF THE BOARD OF TRUSTEES TEACHERS' AND STATE EMPLOYEES' RETIREMENT SYSTEM OF NORTH CAROLINA (IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES); AND STATE OF NORTH CAROLINA, DEFENDANTS

---

WILLIAM H. WOODARD, AND RAYMOND E. AVERETTE, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, PLAINTIFFS v. NORTH CAROLINA LOCAL GOVERNMENT EMPLOYEES' RETIREMENT SYSTEM, A CORPORATION; BOARD OF TRUSTEES OF THE NORTH CAROLINA LOCAL GOVERNMENT EMPLOYEES' RETIREMENT SYSTEM, A BODY POLITIC AND CORPORATE; DENNIS DUCKER, DIRECTOR OF THE RETIREMENT SYSTEM DIVISIONS AND DEPUTY TREASURER FOR THE STATE OF NORTH CAROLINA (IN HIS OFFICIAL CAPACITY); HARLAN E. BOYLES, TREASURER OF THE STATE OF NORTH CAROLINA AND CHAIRMAN OF THE BOARD OF TRUSTEES OF THE NORTH CAROLINA LOCAL GOVERNMENT EMPLOYEES' RETIREMENT SYSTEM (IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES); STATE OF NORTH CAROLINA, DEFENDANTS

FAULKENBURY v. TEACHERS' AND STATE EMPLOYEES' RET. SYS.

[133 N.C. App. 587 (1999)]

BONNIE G. PEELE, on behalf of herself and all others similarly situated, Plaintiff v. TEACHERS' AND STATE EMPLOYEES' RETIREMENT SYSTEM OF NORTH CAROLINA, a corporation; BOARD OF TRUSTEES TEACHERS' AND STATE EMPLOYEES' RETIREMENT SYSTEM OF NORTH CAROLINA, a body politic and corporate; DENNIS DUCKER, Director of the Retirement System Divisions and Deputy Treasurer of the State of North Carolina (in his official capacity); HARLAN E. BOYLES, Treasurer of the State of North Carolina and Chairman of the Board of Trustees Teachers' and State Employees' Retirement System of North Carolina (in his official capacity); and STATE OF NORTH CAROLINA, Defendants

RALPH R. HAILEY, JR. on behalf of himself and all others similarly situated, Plaintiff v. TEACHERS' AND STATE EMPLOYEES' RETIREMENT SYSTEM OF NORTH CAROLINA, a corporation; BOARD OF TRUSTEES TEACHERS' AND STATE EMPLOYEES' RETIREMENT SYSTEM OF NORTH CAROLINA, a body politic and corporate; DENNIS DUCKER, Director of the Retirement System Divisions and Deputy Treasurer of the State of North Carolina (in his official capacity); HARLAN E. BOYLES, Treasurer of the State of North Carolina and Chairman of the Board of Trustees Teachers' and State Employees' Retirement System of North Carolina (in his official capacity); and the STATE OF NORTH CAROLINA, Defendants

No. COA98-874

(Filed 15 June 1999)

**1. Pensions and Retirement— benefits—retroactive— interest**

The interest calculation approved by the trial court for the retroactive payment of State disability and service retirement benefits was erroneous. To be consistent with the purpose of N.C.G.S. § 135-1(19), N.C.G.S. § 128-21(18) and the principles of the common law, the statutes must be read to require that any underpayments accrue interest from the date they become due, with payments due and payable on a monthly basis.

**2. Statutes— interpretation—construction of those administering—direct conflict with purpose of act**

The interpretation of N.C.G.S. § 135-1(19) and N.C.G.S. § 128-21(18) by the Teachers' and State Employees' Retirement System did not influence the Court of Appeals in a decision involving disability and retirement benefits where that interpretation was not consistent with the intent and purpose of the legislature, despite the tenet of statutory construction that the construction of a statute by those vested with the authority to administer law is entitled to great consideration.

**3. Pensions and Retirement— benefits—retroactive—compounding of interest**

   The method mandated by the trial court for compounding the interest on underpayment of disability and retirement benefits was erroneous because it failed to recognize that each underpayment was due monthly and that the annual period giving rise to compounding runs from the due date of each underpayment.

   Appeal by plaintiffs Dorothy M. Faulkenbury, *et al.*, William H. Woodard, *et al.*, Bonnie G. Peele, *et al.*, and Ralph R. Hailey, Jr., *et al.* from order dated 22 April 1998 by Judge Narley L. Cashwell in Wake County Superior Court. Heard in the Court of Appeals 30 March 1999.

   *Womble Carlyle Sandridge & Rice, PLLC, by G. Eugene Boyce and Marvin Schiller, for plaintiff-appellants.*

   *Attorney General Michael F. Easley, by Senior Deputy Attorney General Edwin M. Speas, Jr., and Special Deputy Attorneys General Norma S. Harrell and Alexander McC. Peters, for the State.*

GREENE, Judge.

   Dorothy M. Faulkenbury, *et al.*, William H. Woodard, *et al.*, Bonnie G. Peele, *et al.*, and Ralph R. Hailey, Jr., *et al.* (collectively, Plaintiffs) appeal from the trial court's Order on Calculation of Interest allowing the Teachers' and State Employees' Retirement System of North Carolina, *et al.* and the North Carolina Local Governmental Employees' Retirement System, *et al.* (collectively, Defendants) to calculate "back benefits or underpayments due [Plaintiffs] in the same manner in which [Defendants have] traditionally."

   This appeal is the seventh in a long progeny of appeals between the parties, and therefore, a full recitation of the facts is not necessary since they have been set out in great detail in those opinions.[1] Accordingly, we only will discuss the facts pertinent to this appeal.

---

1. The preceding appeals are: *Faulkenbury v. Teachers' and State Employees' Retirement System,* 108 N.C. App. 357, 424 S.E.2d 420, *aff'd per curiam,* 335 N.C. 158, 436 S.E.2d 821 (1993); *Woodard v. Local Governmental Employees' Retirement System,* 108 N.C. App. 378, 424 S.E.2d 431, *aff'd per curiam,* 335 N.C. 161, 435 S.E.2d 770 (1993); *Faulkenbury v. Teachers' and State Employees' Retirement Sys.,* 110 N.C.

FAULKENBURY v. TEACHERS' AND STATE EMPLOYEES' RET. SYS.

[133 N.C. App. 587 (1999)]

This case surrounds the underpayment of certain disability and service retirement payments due to Plaintiffs through their participation in the North Carolina governmental retirement plans. On 1 July 1982, the method in which disability benefits were calculated was changed by the General Assembly, and as a result, Plaintiffs received less money in pension payments than they would have if they had retired for disability prior to the date of the change.[2]

Plaintiffs initially brought suit on 5 November 1990, and on 21 July 1995, the trial court concluded that "Plaintiffs [were] entitled to interest and the actuarial equivalent of their underpayments in accordance with N.C. Gen. Stat. § 135-10 and § 128-32 . . . from 3 years prior to the date each action was filed and hereafter." In 1997, our Supreme Court held that the General Assembly's change in the disability pension statutes violated the Contract Clause of the United States Constitution, and affirmed the decision of the trial court and remanded the case for further proceedings. *Faulkenbury v. Teachers' and State Employees' Ret. Sys.*, 345 N.C. 683, 483 S.E.2d 422 (1997). In affirming the trial court, the Supreme Court specifically noted that plaintiffs were entitled to "regular interest" on the underpayments because "regular interest" is a necessary component of the actuarial value.

On remand, the trial court concluded that Defendants "should calculate the 4% 'regular interest' provided by [N.C. Gen. Stat. § 135-1(19)] and apply it to the back benefits or underpayments due [Plaintiffs] in the same manner in which [Defendants have] traditionally computed and applied interest in the calculation of the statutory 'regular interest.' " Although the trial court did not explain the "traditional" method used by Defendants for calculating "regular interest," it did use the following example:

Ms. Faulkenbury's retroactive benefits or underpayments . . . totaled $176.72 for 1987. No interest was added for 1987. Additional underpayments of $1,085.82 were added for 1988. Also, for 1988, interest in the amount of $7.07 on the underpay

---

App. 97, 428 S.E.2d 851 (1993); *Woodard v. Local Governmental Employees' Retirement Sys.*, 110 N.C. App. 83, 428 S.E.2d 849 (1993); *Faulkenbury v. Teachers' and State Employees' Ret. Sys.*, 345 N.C. 683, 483 S.E.2d 422 (1997); and *Faulkenbury v. Teachers' and State Employees' Retirement Sys.*, 132 N.C. App. 137, 510 S.E.2d 675 (1999).

2. Plaintiffs were all employed by the State for more than five years before the date of the change, possessed fully vested retirement and disability benefits on the date of the change, and became disabled after the date of the change.

ments through the end of 1987 were added to the total. At the end of 1989, additional interest was added on the total of underpayments and interest that existed at the end of 1988, so that $50.78 in interest at the rate of 4% of the total of $1,269.61 of interest and underpayments at the end of 1988 was added to the balance for 1989. For 1990, $98.47 in interest was added at the rate of 4% on the total of $2,461.71 in underpayments and interest through 1989.

The dispositive issue is whether the "traditional" method used by Defendants for calculating interest on disability and service retirement underpayments is consistent with the statutory definition of "regular interest."

"Regular interest" is defined statutorily as "interest compounded annually at such a rate as shall be determined by the Board of Trustees [Teachers' and State Employees' Retirement System]." N.C.G.S. § 135-1(19) (Supp. 1998); *see also* N.C.G.S. § 128-21(18) (1999). The parties agree that the Board of Trustees has established an interest rate of 4 percent. The parties do not agree on the method of accruing and compounding the interest.

### Interest Accrual

[1] It is Defendants' position that under sections 135-1(19) and 128-21(18) interest accrues *annually*. In other words, interest is due only on funds that have been owed for a year. It thus follows, Defendants contend, that Ms. Faulkenbury was not entitled to any interest credit at the end of 1987 "because she had no sums that had been due for a year." We disagree.

Although sections 135-1(19) and 128-21(18), defining "regular interest," are specific in stating that the interest is to be "compounded annually," they are completely silent as to when the interest is to accrue. In other words, is the interest earned daily, monthly, quarterly, or annually? In the absence of a specific directive from the legislature, this Court must determine the intent of that body, *State v. Hart*, 287 N.C. 76, 80, 213 S.E.2d 291, 194-95 (1975), and in doing so, we also must accept that the legislature was aware of the principles of the common law in place at the time of the statute's enactment, 73 Am. Jur. 2d *Statutes* § 184 (1974). A basic principle of the common law is that if money is wrongfully withheld, "interest begins to run . . . from the time of [the] wrongful withholding." 47 C.J.S. *Interest & Usury* § 45, at 109 (1982), *see* N.C.G.S. § 24-5(a) (1991)

(interest on breach of contract award runs from "date of breach"). The construction of a statute also should be made with reference to the purpose of that statute so a construction is adopted that serves to promote the legislative goal. *See Hart*, 287 N.C. at 80, 213 S.E.2d at 294-95.

In this case, the legislative purpose is clear: fully reimburse those beneficiaries who have received less than their rightful entitlements. N.C.G.S. § 135-1(2) (underpaid employees must receive payment of "equal value"). To be consistent with the purpose of sections 135-1(19) and 128-21(18) and the principles of the common law, these statutes must be read to require that any underpayments accrue interest from the date they become due.[3] In other words, the beneficiaries are entitled to daily interest on the underpayments. Any other construction would deny the beneficiaries full restitution for their loss.[4] The payments in this case are due and payable on a monthly basis,[5] N.C.G.S. § 135-1 (all pensions and annuities "shall be payable in equal monthly installments"), and Plaintiffs therefore are entitled to an accrual of interest from that date. Accordingly, the method of interest calculation approved by the trial court was in error and must be reversed.

## Interest Compounding

[3] There can be no dispute that sections 135-1(19) and 128-21(18) require that the interest be "compounded annually." In more simple terms, the statutes entitle the beneficiaries to interest, not only on the principle (underpayments) due, but on the accrued or earned interest. The interest on the accrued interest (compound interest) is

---

[2] 3. In so holding, we reject the position of Defendants that we are bound by their interpretation of these statutes. We are mindful of the tenet of statutory construction holding that construction of a statute by those vested with the authority to administer the law in question is entitled to "great consideration." *Duggins v. Board of Examiners*, 25 N.C. App. 131, 137, 212 S.E.2d 657, 662 (1975), *aff'd*, 294 N.C. 120, 240 S.E.2d 406 (1978). That same tenet of construction, however, also holds that "[u]nder no circumstances will the courts follow an administrative interpretation in direct conflict with the clear intent and purpose of the act under consideration." *Watson Industries v. Shaw, Comr. of Revenue*, 235 N.C. 203, 211, 69 S.E.2d 505, 511 (1952). As we have determined Defendants' interpretation in this case is not consistent with the intent and purpose of the legislature, we are not influenced by their construction.

4. For example, if we construe the statute as to require that interest accrue annually (no interest credited until the expiration of twelve months), as Defendants contend, Defendants could pay Plaintiffs eleven months after the underpayment was due, and not owe Plaintiffs any interest because no interest would have accrued.

5. Both parties stipulated to this fact before this Court.

**FAULKENBURY v. TEACHERS' AND STATE EMPLOYEES' RET. SYS.**

[133 N.C. App. 587 (1999)]

earned annually. An example of interest compounded annually: the deposit of $100.00 in a bank account at 10 percent will earn the depositor $10.00 at the end of the first year, for a total credit of $110.00. At the end of the second year, the depositor earns $10.00 on the original $100.00 deposit and $1.00 on the $10.00 interest previously credited to his account. At the end of the second year, therefore, the depositor has $121.00 in his account. *See Dictionary of Finance and Investment Terms* 72 (1987).

In this case, the interest earned each day following the date of the underpayment (accrued interest), must be compounded once a year beginning at the end of the first year from the day the interest was earned.[6] The method of compounding the interest as mandated by the trial court in this case erroneously permits the totaling of the underpayments for a twelve-month period and treats those underpayments as one. This method fails to recognize that each of the underpayments is due monthly and the annual period (giving rise to compounding) runs from the due date of each underpayment.

In summary, Defendants "traditional" method does not comport with the statutory requirement for "regular interest," and we, therefore, reverse the order of the trial court and remand for the entry of an order requiring the computation of interest as herein prescribed.

Reversed and remanded.

Judges MARTIN and McGEE concur.

---

6. For example: if the State underpaid Ms. Faulkenbury $176.72 for 1987, and assuming $88.36 was due 1 November 1987, that $88.36 would accrue interest on a daily basis in the amount of $.009 per day (4 percent per annum). Interest on this $.009 would not be earned or credited to Ms. Faulkenbury until 2 November of 1988, at which time Ms. Faulkenbury would be entitled to 4 percent interest on the $.009.