CITY OF MONROE, PLAINTIFF-APPELLEE v. W.F. HARRIS DEVELOPMENT, LLC, DEFENDANT-APPELLANT

No. COA97-1369

(Filed 6 October 1998)

1. **Appeal and Error— appealability—condemnation action— order resolving all issues except damages**

   A trial court order in a condemnation action which resolved all issues but damages was immediately appealable.

2. **Eminent Domain— propriety of taking—public purpose established**

   The trial court did not err in a condemnation action where defendant contended that the court erroneously concluded that the nature and extent of the property acquired was not a judicial question. Reading the challenged conclusion in context, it is clear that the trial court did not disregard allegations of arbitrary and capricious conduct by the City, but specifically made them the subject of it judicial inquiry in determining the propriety of the City's taking of this tract.

3. **Eminent Domain— size of taking—necessity to accomplish purpose**

   The City of Monroe presented sufficient evidence to prove the necessity of a fee simple title and the trial court did not err by concluding that the taking was not an arbitrary and capricious act taken in bad faith where, although it was argued that the City had sufficient land to undertake the expansion of the airport without taking this tract, the city manager made it clear that property which lay outside the current master plan boundaries was necessary to the fulfillment of the City's ultimate goal. Based upon *City of Charlotte v. Cook*, 348 N.C. 205, the City was only required to

show that it needed a fee simple title in all of the tract in order to expand the airport.

**4. Eminent Domain— airport taking—federal and state aviation approvals**

   The City's condemnation of a tract did not amount to an abuse of its condemnation power based on its failure to obtain property appraisals and approvals from federal and state aviation agencies. The City's failure to follow the guidelines was not so egregious an omission as to constitute a manifest abuse of discretion sufficient to overcome the presumption that the City initiated the proceeding in good faith and in accordance with the spirit of the law.

**5. Eminent Domain— taking as abuse of discretion—intent to injure competitor—insufficient evidence**

   The trial court's order was not reversed in a condemnation action where defendant contended that the tract was taken to prevent development of a corporate center which would compete with the City's industrial park, but the court found that the allegations referred to actions of the City which were consistent with carrying out a public purpose in a lawful way or were not substantiated by the evidence.

   Appeal by Defendant-Appellant from judgment entered 14 July 1997 by Judge William Z. Wood in Union County Superior Court. Heard in the Court of Appeals 20 August 1998.

   *Kilpatrick Stockton by Attorney Keith J. Merritt for defendant-appellant.*

   *Underwood Kinsey Waren & Tucker by Attorney William E. Underwood Jr. for the plaintiff-appellee.*

WYNN, Judge.

   This appeal arises out of a condemnation action brought by the City of Monroe to take two tracts consisting of 14.87 acres of a 42.77 acre parcel of land owned by Harris Development Corporation ("Harris"). The property, initially purchased by William and Loretta Harris, was transferred to Harris in order to develop an industrial park. On 29 January 1997, Harris filed its Answer, Counterclaim, and Motion for Preliminary Injunction denying that the City of Monroe had the right to take the property, denying the amount of money

placed on the deposit was just compensation, and seeking preliminary and permanent injunctive relief to prevent title from being vested in the City of Monroe.

In response, the City of Monroe moved to dismiss the counterclaim and moved to amend their complaint to change the purpose of the taking of the property. Originally, both Tract 1 and Tract 2 were taken to expand the airport. The City of Monroe, however, subsequently determined that Tract 1 would be used as a public roadway for the airport's new terminal. The trial court granted the City of Monroe's motion to amend its complaint and no appeal was taken from this motion.

On 14 July 1997, the trial court entered an order as to all issues other than damages. Specifically, the court denied Harris Development's Motion for Preliminary and Permanent Injunctive relief, dismissed the Counterclaim filed by Harris Development, and ruled the City of Monroe had acquired fee simple title to the Harris property. Harris appeals the trial court's order.

[1] We first note that in *North Carolina State Highway Commission v. Nuckles*, 271 N.C. 1, 13, 155 S.E.2d 772, 783 (1967), our Supreme Court held that a highway condemnation proceeding which resolves all questions except damages is immediately appealable. Therefore, in the instant case, although the issue of damages has not been resolved, the trial court's order on all issues except damages is immediately appealable.

I.

[2] On appeal, Harris first argues that "the trial court erred in finding that the City of Monroe's right to acquire part of Tract 2 of the property was not a judicial question for the court . . . .." Specifically, Harris challenges the trial court's conclusion of law #4 which states:

The issues raised by defendant Harris concerning the right of the City to acquire the part of Tract 2 that was not shown to be acquired on the ALP Update address the nature and extent of the property required by the City for expansion of its Airport and is not a judicial question for this Court.

Although the propriety of a taking is generally not reviewable by the courts once a public purpose is established, our courts have consistently held that "[u]pon specific allegations tending to show bad faith, malice, wantonness, or oppressive and manifest abuse of dis-

cretion by the condemnor, [the takings] issue . . . becomes a subject of judicial inquiry as a question of fact to be determined by the judge." *Greensboro-Highpoint Airport Authority v. Irvin,* 36 N.C. App. 662, 665, 245 S.E.2d 390, 392, *appeal dismissed,* 295 N.C. 548, 248 S.E.2d 726 (1978), *cert. denied,* 440 U.S. 912, 59 L. Ed. 2d 460 (1979) (citations omitted). Our courts have also held that in raising such allegations, the burden of proof is upon the condemnee to show that an abuse of discretion has indeed occurred as there is a presumption in this State that public officials discharge their duties in good faith and in accordance with the spirit and purpose of the law. *See Board of Education of Hickory v. Seagle,* 120 N.C. App. 566, 463 S.E.2d 277 (1995), *disc. review improvidently allowed,* 343 N.C. 509, 471 S.E.2d 63 (1996) (per curiam); *Painter v. Wake County Board of Education,* 288 N.C. 165, 217 S.E.2d 650 (1975).

In this case, the trial court, having first determined that "[t]he City ha[d] a valid purpose for acquiring . . . Tract 2 of the Harris Property, to wit: expansion of the Airport," then concluded as a matter of law that:

2. Neither the taking of Tract 1 for use as a public road nor the taking of Tract 2 for Airport expansion constitutes an arbitrary and capricious act undertaken in bad faith or a manifest abuse of discretion by the City.

3. Defendant Harris has not offered sufficient credible and substantial evidence to overcome the presumption that the officials of the City have discharged their duties in good faith and exercised their powers in the spirit and purpose of the law.

According to the trial court's order, it was only after reaching these conclusions that the court then concluded the issues raised by Harris concerning whether part of Tract 2 addressed "the nature and extent of the property," and therefore, they were not judicial questions for the court.

Reading the challenged conclusion in the context of conclusions #2 and 3, as well as the numerous findings of fact set forth by the court, it is clear the trial court did not disregard Harris' allegations of arbitrary and capricious conduct on the part of the City of Monroe, but that it specifically made them the subject of its judicial inquiry in determining the propriety of the City of Monroe's taking of Tract 2. Accordingly, Harris' first argument for reversal of the trial court's order is rejected.

II.

Next Harris contends, in a number of interrelated assignments of error, the court erred in concluding as a matter of law that the City of Monroe's taking of Tract 2 for the purpose of expanding its airport was not an arbitrary and capricious act undertaken in bad faith. According to Harris, the taking of Tract 2 was an abuse of the City of Monroe's discretion for three reasons: (1) the City took more of the property than was necessary for expansion of the Monroe Airport; (2) the City failed to comply with required federal grant and aviation procedures for the taking of property by eminent domain; and (3) the City's taking of Tract 2 was undertaken for the sole purpose of injuring the Harris Corporate Center. We address each of Harris' arguments in turn.

[3] In his first argument, Harris contends the City of Monroe's actions were "arbitrary, capricious, oppressive, excessive, and an abuse of discretion" because its condemnation of all of Tract 2 was not necessary to accomplish its public purpose. Specifically, Harris contends that the part of the property lying outside of the future expansion lines of the Monroe Airport is in excess of what the City of Monroe needs for its airport expansion; that the City of Monroe already had sufficient land to undertake the expansion of its airport without having to resort to the taking of Tract 2; and that an easement would have been sufficient to serve the public purpose. We disagree.

Under North Carolina law, "[c]ondemnation by right of eminent domain is not allowed, except so far as it is necessary for the proper construction and use of the improvement for which it is taken." *Spencer v. Wills*, 179 N.C. 175, 178, 102 S.E.2d 275, 277 (1920). In support of his argument that the City of Monroe took property in excess of what was necessary for its purpose, Harris cited the deposition testimony of Jerry Cox, the City Manager of Monroe. Harris specifically points to the following testimony:

Q. So the line that is on the Airport Master Plan showing the future property line established the amount of land that is needed for airport expansion under the master plan?

A. I will answer the question this way, under the immediate plan.

Q. So if there is land that is outside the future property line as shown on the current master plan, then it isn't needed for current airport expansion, correct?

A. I will say that what's shown on the airport master plan that has been adopted is our best estimation, judgment as to what we need to accomplish the current master plan that has been approved.

Q. So if it lies outside the current master plan, you don't currently need that property?

A. As far as currently need, that's correct . . . .

Q. So, in other words, the city is taking by eminent domain property that lies outside the future expansion lines for Monroe Municipal Airport as shown on the Airport's Master plan?

A. On the current master plan, but again, in terms of future needs, as to being future expansion, that would be incorrect.

Q. But on the current master plan, it is outside the area that is being shown for future expansion?

A. On the current master plan that I'm looking at, that's correct.

Q. Which you've identified as the accurate current master plan?

A. As presented today, yes.

Contrary to Harris' assertion, we do not believe Mr. Cox's testimony establishes that the taking of all of Tract 2 was not necessary for the City of Monroe's future expansion of the airport. Although Mr. Cox admitted that part of Tract 2 fell outside the airport's property line, he made it clear that the land was not included within the expansion boundaries because it was not "what [the City] need[ed] to accomplish the *current* master plan that ha[d] been approved." (emphasis added). Indeed, he was rather adamant in noting the airport master plan was merely a plan by which the City of Monroe was to accomplish its most "immediate" needs, and in terms of the City's future needs and future plans for expanding the airport, the property which lay outside the master plan boundaries was necessary to the fulfillment of the City's ultimate goal.

Moreover, even if we were to read Mr. Cox's testimony as contemplated by defendant, we believe the following findings of fact made by the trial court sufficiently justify its conclusion that the City of Monroe was entitled to take all of Tract 2 in fee simple rather than by acquiring an easement:

5. The area of the Harris property that the City had denominated in this action as being acquired for Airport expansion, Tract 2 as

shown on the Official Map, which the City has filed herein pursuant to Section 40A-45 of the North Carolina General Statues, and described in the resolutions of the City's Council authorizing the condemnation, is larger than the area of the Harris Property shown to be acquired for Airport expansion on the ALP Update. The area of Tract 2 included in the condemnation action that is not shown as being acquired on the ALP Update is approximately 1,000 feet long and 150 feet wide located at the rear of the Harris Property as it is being planned for development and at its closest point is slightly less than 100 feet from the taxiway to the Airport's runway. The ALP Update shows that almost all of this area of Tract 2 of the Harris Property does lie within the Airport's building restriction line.

6. The City utilized a consultant to provide airport planning expertise in connection with the ALP Update. It is the opinion of this consultant that acquisition of both Tracts 1 and 2 of the Harris Property as shown on the Official Map is necessary for expansion of the Airport.

7. The Division of Aviation of the North Carolina Department of Transportation concurs with the decision of the City to acquire fee simple ownership of the area originally omitted from the ALP Update.

In anticipation of our reliance on these findings, Harris contends the opinion of the City of Monroe's consultant, Dain Riley, is not credible because "[n]o where in the affidavit does [he] explain why the City needs the land outside the future expansion boundaries of the Monroe Airport as shown on the airport master plan." Furthermore, Harris argues, Mr. Riley's opinion should have been disregarded by the trial court because his 1997 testimony was that additional land is needed "contradicts the very airport layout he created less than a year before the City began this condemnation proceeding." We find both of Harris' arguments unpersuasive.

First, although Mr. Riley did not couch his opinion in terms of the City of Monroe's needs "outside the future expansion boundaries of the Monroe Airport," his affidavit specifically states that his opinion applies to the City's "acquisition of Tracts 1 and 2 of the Harris Property" which, in our view, can only be read to mean all of Tract 2, including the land which lies outside the future expansion boundaries of the airport. Second, we are not convinced that the opinion Mr. Riley expressed in his 1997 affidavit necessarily "contradicts" the

1995 Monroe Airport Plan where, as here, the opinion of Mr. Riley was simply that he believed the City needed *more* land to expand the airport than he had initially envisioned almost two years ago. Furthermore, even if the opinion expressed in Mr. Riley's affidavit did contradict the 1995 airport plan, nothing in our law precludes him from giving such a contradictory opinion. The 1995 airport plan is not an affidavit; thus, it cannot be considered prior testimony by which we could judge the credibility of Mr. Riley's 1997 affidavit. Therefore, contrary to defendant's contention, we find Mr. Riley's opinion to be very credible.

Moreover, Harris relies on our holding in *City of Charlotte v. Cook*, 125 N.C. App. 205, 207, 479 S.E.2d 503, 506 (1997), in which we held that the City abused its discretion in condemning property in fee simple when an easement was sufficient to carry out the intended purpose. However, this reliance is misplaced as our holding in that case was reversed by the Supreme Court in *City of Charlotte v. Cook*, 348 N.C. 222, 498 S.E.2d 605 (1998). According to the Supreme Court, "[t]he City does not have to show that it would be impossible to construct a [pipeline] using a easement. If the City can show that it needs a fee simple title to construct and operate the [pipeline] under optimum conditions, this is proof of necessity." *Id.* at 226, 498 S.E.2d at 608. Based upon the Supreme Court's holding in *Cook*, we find the City of Monroe was only required to show that it needed a fee simple title in all of Tract 2 in order to expand the City of Monroe's Airport. We, therefore, conclude, upon our review of the ALP Update Map and the affidavits of the City's consultant and the Department of Aviation, that the City of Monroe presented sufficient evidence to prove the necessity of a fee simple title. Accordingly, we find no merit in the Harris' argument that the City already had sufficient land to undertake the expansion of its airport without having to resort to the taking of Tract 2.

[4] Defendant next argues that the City of Monroe's condemnation of Tract 2 amounted to an abuse of its condemnation power because it failed to obtain the two (2) property appraisals that the federal aviation department requires of a municipality before it can condemn property, and because it sought to take land outside of the airport expansion boundaries without first obtaining the approval of the North Carolina Division of Aviation.

While it is true, as defendant notes in its brief, that the guidelines of the Federal Aviation Administration ("FAA") and the Aviation

Division of the North Carolina Department of Transportation ("Aviation Division") are "important requirement[s] in that they assure that a property owner's land will only be taken with due process," we are not convinced that under the facts of this case, the City of Monroe's failure to follow the subject guidelines is so egregious an omission so as to constitute a manifest abuse of its discretion. The record indicates the City of Monroe obtained all but one of the appraisals required by the FAA and the Aviation Division which did approve—albeit "after the fact"—the City's plan to condemn all of Tract 2 for expansion of the airport. Under these circumstances, we cannot say that the procedural failures noted by Harris is sufficient evidence to overcome the presumption that the City of Monroe initiated this condemnation proceeding in good faith and in accordance with spirit of the law. Accordingly, Harris' second argument for a finding of abuse is rejected.

[5] Finally, we reach Harris' argument that the condemnation of Tract 2 was an abuse of the City of Monroe's discretion because it was undertaken solely to injure the Harris Corporate Center. That is, Harris contends that "the only logical explanation for taking [the] land [was] to prevent Harris Development from using it to develop the Harris Corporate Center, which competes for the same tenants as the industrial park being developed across the street by the City."

In addressing this argument, we find it significant that the trial court made the following finding:

> The evidence offered to support the allegations of defendant Harris that the City is acquiring Tracts 1 and 2 of the Harris Property pursuant to a "plan or scheme to lessen or destroy the value of the . . . (Harris Property) so that the City could purchase the property at less than its fair market value" or "eliminate competition for the City's Corporate Center" either refer to actions by the City that are consistent with carrying out a lawful, public purpose in a lawful way or are not substantiated by the evidence of the City's intent to do other than what it has a legal right to do.

Upon our review of the record, we believe the trial court was justified in making the aforementioned finding of fact. Accordingly, we have no cause to reverse the trial court's order on this ground.

For all the reasons discussed herein, the order of the trial court is affirmed with instructions to proceed to trial on the issue of damages.

DARRYL BURKE CHEVROLET v. AIKENS

[131 N.C. App. 31 (1998)]

Affirmed.

Judges TIMMONS-GOODSON and SMITH concur.

This opinion was authored and delivered to the Clerk of the North Carolina Court of Appeals by Judge Wynn prior to 1 October 1998.