PIEDMONT TRIAD REGIONAL WATER AUTHORITY v. SUMNER HILLS INCORPORATED, and DENMARK GOLF SERVICES, INC.

No. 86PA00

(Filed 6 April 2001)

**Eminent Domain— size of taking—de novo review—condemnor shows property "of little value"—condemning authority shows proposed condemnation authorized**

The Court of Appeals erred by concluding that plaintiff may condemn defendants' entire tract of property including the 97 unneeded acres because a de novo review applies to cases brought under N.C.G.S. § 40A-7 for: (1) the threshold inquiry under N.C.G.S. § 40A-7(a) that the comdemnor has the burden to show the unneeded remainder of property is "of little value;" and (2) thereafter the condemning authority must affirmatively demonstrate the proposed condemnation is authorized by N.C.G.S. § 40A-7(a)(1), (2), or (3).

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 136 N.C. App. 425, 524 S.E.2d 375 (2000), reversing and remanding an order entered by Cornelius, J., on 26 October 1998 in Superior Court, Guilford County. On 15 June 2000 the Supreme Court allowed plaintiff's conditional petition for discretionary review as to additional issues. Heard in the Supreme Court 16 October 2000.

*Adams Kleemeier Hagan Hannah & Fouts, P.L.L.C., by M. Jay DeVaney and Erin L. Roberts, for plaintiff-appellee.*

*Hill, Evans, Duncan, Jordan & Davis, P.L.L.C., by R. Thompson Wright, for defendant-appellant Sumner Hills Incorporated.*

MARTIN, Justice.

Piedmont Triad Regional Water Authority (the Water Authority) is a public authority organized pursuant to Article 1 of Chapter 162A

of the General Statutes. *See* N.C.G.S. §§ 162A-1 to -19 (1999). The Water Authority is vested with the power of eminent domain under N.C.G.S. § 162A-6.

On 24 February 1998 the Water Authority filed a complaint, declaration of taking and notice of deposit (the complaint) to condemn property for the Randleman Dam and Lake water supply project (the Project) in Guilford and Randolph Counties. The property at issue, an approximately 145-acre tract owned by Sumner Hills Incorporated (Sumner Hills), is located in Sumner Township, Guilford County, North Carolina. A substantial portion of the Property is bounded by Reddick Creek. Sumner Hills and its lessees have used the property as an eighteen hole golf course for over twenty years. The Project requires approximately 48 acres along Reddick Creek, leaving a remainder of approximately 97 acres not necessary for the public purpose specified in the complaint.

The question raised by the instant appeal is whether the Water Authority may condemn the entire tract of property, including the 97 unneeded acres, under North Carolina law.

Section 40A-7(a) of our General Statutes provides:

(a) *When the proposed project requires condemnation of only a portion of a parcel of land leaving a remainder of such shape, size or condition that it is of little value,* a condemnor may acquire the entire parcel by purchase or condemnation. If the remainder is to be condemned the petition filed under the provisions of G.S. 40A-20 or the complaint filed under the provisions of G.S. 40A-41 shall include:

> (1) A determination by the condemnor that a partial taking of the land would substantially destroy the economic value or utility of the remainder; or
>
> (2) A determination by the condemnor that an economy in the expenditure of public funds will be promoted by taking the entire parcel; or
>
> (3) A determination by the condemnor that the interest of the public will be best served by acquiring the entire parcel.

N.C.G.S. § 40A-7(a) (1999) (emphasis added).

The Water Authority alleged and declared in the complaint that Sumner Hills' entire tract should be condemned because the requirements of subsection 40A-7(a)(1), (2), or (3) had been met. In its answer, Sumner Hills asserted that the Water Authority had "improperly determined that the entire tract should be condemned, rather than the portion thereof actually required for the public purpose."

After a hearing, the trial court determined "[t]he Project require[d] the taking of approximately 48 acres along Reddick Creek, leaving approximately 97 acres of the original Property." Moreover, it found the 97-acre portion will "retain substantial value" and "will not be in a shape, size and condition so as to have little value, even though the value of this remaining parcel will be adversely affected by the taking." Based on its findings of fact, the trial court concluded the Water Authority was not authorized under N.C.G.S. § 40A-7 to condemn the entire 145-acre tract and that the condemnor may take only that portion of the property necessary for the Project. Accordingly, the trial court ordered plaintiff to file an amended map showing the portion of the property actually required for the Project.

The Court of Appeals reversed the trial court. *Piedmont Triad Reg'l Water Auth. v. Sumner Hills Inc.*, 136 N.C. App. 425, 430, 524 S.E.2d 375, 378 (2000). According to the Court of Appeals, because "the purpose of section 40A-7 [was] to set forth the allegations necessary for the [Water] Authority's complaint, it would be illogical to require a threshold determination that the remainder [was] 'of little value' in order to condemn the property." *Id.* at 429, 524 S.E.2d at 377. The Court of Appeals felt "that the phrase 'of little value' [was] so subjective that our legislature could not have possibly intended it to be a threshold determination." *Id.* The Court of Appeals therefore concluded that the "of little value" provision in the statute served only as "a mere introduction to the more specific determinations in subsections (1), (2) and (3)." *Id.* We disagree.

We have not previously addressed whether a condemnor may take property in excess of that required for an otherwise valid public purpose as envisioned under section 40A-7. Because the legislature stated no specific intent in enacting section 40A-7(a), "this Court must determine the intent of that body." *Faulkenbury v. Teachers' & State Employees' Ret. Sys. of N.C.*, 133 N.C. App. 587, 591, 515 S.E.2d 743, 746, *disc. rev. denied and cert. denied*, 351 N.C. 102, 540 S.E.2d 358 (1999); *see also State v. Bell*, 184 N.C. 701, 705, 115 S.E. 190, 192 (1922).

At the outset we note that eminent domain is permissible in North Carolina, as in other American jurisdictions, only for a valid public purpose. *See, e.g., City of Charlotte v. Heath,* 226 N.C. 750, 754, 40 S.E.2d 600, 603-04 (1946); *City of Monroe v. W.F. Harris Dev., L.L.C.,* 131 N.C. App. 22, 26, 505 S.E.2d 160, 163, *disc. rev. denied,* 349 N.C. 528, 526 S.E.2d 173 (1998); 1 Julius L. Sackman, *Nichols on Eminent Domain* § 1.11 (rev. 3d ed. 2000); 2 James A. Webster, Jr., *Webster's Real Estate Law in North Carolina* § 19-1(a), at 918 (Patrick K. Hetrick & James B. McLaughlin, Jr., eds., 5th ed. 1999) [hereinafter *Webster's*]. When a proposed project requires only part of a parcel of land, section 40A-7(a) permits condemnation of the entire tract if the unnecessary remainder of land is "of such shape, size or condition that it is of little value." At a minimum, however, the condemnor must identify the land it is condemning for the proposed project and the land it is condemning in excess of the public purpose. The statute thus prevents the condemnor from taking the entire tract of land by simply alleging or declaring that the property is needed for a public purpose *without* defining that segment of the land actually necessary for the proposed project.

By giving effect to the "of little value" provision, we effectuate the legislative intent to prohibit the condemnation of land in excess of an otherwise valid public purpose absent a showing by the condemnor that the remainder is "of little value" to the landowner. Section 40A-7(a), as applied in this fashion, is consistent with the constitutional limitations on eminent domain. *See State v. T.D.R.,* 347 N.C. 489, 498, 495 S.E.2d 700, 705 (1998) ("Where one of two reasonable constructions of a statute will raise a serious constitutional question, it is well settled that our courts should adopt the construction that avoids the constitutional question.").

If the threshold inquiry were read as mere introductory language, the condemnor could take any remainder it desired by simply showing the excess condemnation would promote an "economy in the expenditure of public funds." N.C.G.S. § 40A-7(a)(2). For example, in the present case, the Water Authority could simply sell the remaining 97 acres for a profit after it completed the Project and thus recover some of its costs. This method of condemning and reselling land, known as "recoupment," is generally disfavored in American courts because it denies due process to landowners. *See, e.g., City of Cincinnati v. Vester,* 33 F.2d 242, 244-45 (1929), *aff'd,* 281 U.S. 439, 74 L. Ed. 950 (1930); *State ex rel. State Highway Dep't v. 9.88 Acres of Land,* 253 A.2d 509, 510-11 (Del. 1969). Similarly, this Court has dis-

approved of excess condemnations for the purpose of general financial gain. *See, e.g., N.C. State Highway Comm'n v. Farm Equip. Co.,* 281 N.C. 459, 473, 189 S.E.2d 272, 280 (1972).

Accordingly, we hold, as a threshold inquiry under section 40A-7(a), that the condemnor has the burden to show the unneeded remainder of property is "of little value." In making the determination of the value of any such remainder, the trial court should consider its highest and best use. As stated by an eminent treatise on North Carolina property law:

> [The condemnee] is entitled to have considered all the capabilities of the property and all the uses to which it *may* be applied, or for which it is adapted, which affects its value in the market. He is not limited merely to compensation for the value of his property in its present application. . . . The owner is entitled to compensation for the highest and most profitable use for which the property is adaptable in the reasonably near future . . . .

*See Webster's* § 19-9, at 945-946 (emphasis in original). Once the trial court conducts this threshold inquiry and determines the condemnor has carried its burden of proof, the condemning authority must then affirmatively demonstrate the proposed condemnation is authorized by subsection 40A-7(a)(1), (2), or (3).

We now consider the appropriate standard of review applicable to actions arising under section 40A-7. The Water Authority argues that the manner and extent of its condemnation may not be disturbed by a court of law absent proof its action is arbitrary, capricious, or an abuse of discretion. Indeed, we have held, as a general proposition applicable to eminent domain cases, that "[t]he Legislative Branch decides the political question of the extent of the taking, and the courts cannot disturb such a decision unless the condemnee proves the action is arbitrary, capricious, or an abuse of discretion." *City of Charlotte v. Cook,* 348 N.C. 222, 225, 498 S.E.2d 605, 608 (1998).

*City of Charlotte v. Cook* did not deal with the question we now confront under section 40A-7(a). In *City of Charlotte v. Cook* two tracts of land were condemned for a water pipeline. *Id.* at 223, 498 S.E.2d at 606. The city sought a fee simple interest in the two tracts while the landowner argued only an easement was necessary to fulfill the public purpose. *Id.* at 225-26, 498 S.E.2d at 608. In holding the city could condemn a fee simple interest, we stated it was our duty to decide "whether a taking is for a public purpose," whereas the legis-

lature decides "the extent of the taking." *Id.* at 225, 498 S.E.2d at 607-08. As a result, the legislative decision on the extent of the taking in that case could be overturned only upon a showing the decision was "arbitrary, capricious, or an abuse of discretion." *Id.* at 225, 498 S.E.2d at 608.

In *City of Charlotte v. Cook* it was undisputed the entire parcel of land was needed for a public purpose. The sole issue was what interest, fee simple or easement, the condemnor could take in the property. In contrast, in the present case, only a portion of the tract at issue is necessary for the Project. Therefore, *City of Charlotte v. Cook* and similar cases do not govern actions arising under section 40A-7.

In determining the appropriate standard of review for condemnation proceedings under section 40A-7(a), we are mindful of our duty to construe the statute, if possible, in a constitutional fashion. *See T.D.R.*, 347 N.C. at 498, 495 S.E.2d at 705. As already stated, when the proposed condemnation seeks to encompass property in excess of an otherwise valid public purpose pursuant to section 40A-7(a), constitutional limitations on the exercise of the power of eminent domain are necessarily implicated.

It is well settled that de novo review is ordinarily appropriate in cases where constitutional rights are implicated. *See, e.g., State v. Rogers*, 352 N.C. 119, 124, 529 S.E.2d 671, 674-75 (2000) (whether to grant a motion to continue is in the trial court's discretion; however, when a constitutional question is implicated, de novo review is appropriate); *see also Ornelas v. United States*, 517 U.S. 690, 696-97, 134 L. Ed. 2d 911, 918-19 (1996) (in reviewing constitutional standards that are not "finely-tuned," de novo review is necessary for appellate courts to maintain control of and clarify the legal principles, to "unify precedent," and to provide a defined set of rules).

We observe that decisions arising from other jurisdictions indicate that de novo review is appropriate to protect the due process rights of landowners. *See, e.g., Hensler v. City of Glendale*, 8 Cal.4th 1, 16, 876 P.2d 1043, 1052-53, 32 Cal. Rptr. 244, 253-54 (1994) (application of de novo review was appropriate because prior proceeding was inadequate), *cert. denied*, 513 U.S. 1184, 130 L. Ed. 2d 1129 (1995); *Engelhaupt v. Village of Butte*, 248 Neb. 827, 829, 539 N.W.2d 430, 432 (1995) (application of de novo review by appellate court is proper in condemnation action); *Palazzolo v. State ex rel. Tavares*, 746 A.2d 707, 711 (R.I. 2000) (application of de novo review was

proper in condemnation case implicating constitutional concerns); *T.E. Wannamaker, Inc. v. City of Orangeburg*, 278 S.C. 637, 639, 300 S.E.2d 729, 730 (1983) (per curiam) (application of de novo review in condemnation cases ensures the landowner's due process rights are protected). De novo review of whether the condemnor has satisfied the "of little value" requirement, as well as the condemnor's burden of proof under subsection 40A-7(a)(1), (2), or (3), best ensures uniform and constitutional application of section 40A-7.[1] Accordingly, we hold that de novo review applies to cases brought under section 40A-7.

During the hearing conducted in this matter, the trial court considered two maps of Sumner Hills' property. This Court amended the record on appeal to include both maps pursuant to N.C. R. App. P. 9(b)(5). The maps reveal that the 97-acre remainder tract appears to be comprised of sufficient space and character for Sumner Hills to make valuable use of the remaining land.

The trial court found the 97-acre remainder "would retain substantial value." No transcript of the hearing conducted in the trial court appears in the record on appeal. Moreover, our review of the record reveals the Water Authority has not otherwise included any evidence contradicting this finding. *See Mooneyham v. Mooneyham*, 249 N.C. 641, 643, 107 S.E.2d 66, 67 (1959) ("The responsibility for sending the necessary parts of the record proper is upon the appellant."); *Ronald G. Hinson Elec., Inc. v. Union County Bd. of Educ.*, 125 N.C. App. 373, 375, 481 S.E.2d 326, 328 (1997) ("it is the responsibility of each party to ensure the record on appeal clearly sets forth evidence favorable to that party's position"). In the absence of evidence to the contrary, we are unwilling to disturb the trial court's finding. This finding in turn supports the trial court's conclusion of law that the 97-acre remainder is "not of such shape, size or condition as to render it of little value."

Accordingly, we reverse the decision of the Court of Appeals.

REVERSED.

---

1. We recognize that, absent allegations of bad faith, malice, wantonness, or abuse of discretion on behalf of the condemnor, the propriety of a taking is not generally reviewable. See 2 Webster's § 19-1(a), at 918. Because section 40A-7 necessarily envisions a taking in excess of a public purpose, however, we place the burden upon the condemnor to establish the propriety of the taking under subsection 40A-7(a)(1), (2), or (3) after the condemnor has established the nominal value of the remainder under the "of little value" provision.